Anna Y. Park, CA SBN 164242
Anna.park@eeoc.gov
Nakkisa Akhavan, SBN 286260
nakkisa.akhavan@eeoc.gov
Andrea Ringer, SBN 307315
andrea.ringer@eeoc.gov
Ella Hushagen, SBN 297990
ella.hushagen@eeoc.gov
Dayana R. Pelayo, SBN 308705
dayana.pelayo@eeoc.gov
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone: (213) 785-3080

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Petitioner,<br><br>v.<br><br>VALLARTA FOOD ENTERPRISES, INC., DANIEL FOOD ENTERPRISES, INC., GONZALEZ FOOD ENTERPRISES, INC., JALOS FOOD ENTERPRISES, INC., JOYA FOOD ENTERPRISES, INC., SANTA ISABEL ENTERPRISES, INC., ZIXTA ENTERPRISES INC.,<br>Respondents. | Case No.<br><br>**PETITIONER U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS APPLICATION FOR ORDER TO SHOW CAUSE WHY ITS SUBPOENAS SHOULD NOT BE ENFORCED** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................iii

I.     INTRODUCTION ...........................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND ...........................2

       A. Vallarta Supermarkets Operate under Two Groups of Business
          Entities in Diverse California Communities ...............................2

       B. EEOC Filed Commissioner's Charges to Investigate Vallarta
          Supermarkets ..........................................................................2

          1. GMC Respondents ...............................................................3
          2. EG Respondents ..................................................................3

       C. EEOC Issued Enforceable Subpoenas to Respondents to Obtain
          Necessary Information .............................................................4

III.   LEGAL FRAMEWORK ..................................................................6

IV.    ARGUMENT ..................................................................................7

       A. EEOC Acted Within its Statutory Authority  .............................7

       B. EEOC Fulfilled the Procedural Prerequisites for the Issuance of the
          Subpoenas Served on Respondents. ..........................................7

       C. The Subpoenas Seek Information and Documents Relevant to the
          Investigation of the Charges of Discrimination .........................9

          1. Applicant and Employee Data .............................................10
          2. Training, Job Description, Hiring Officials, and Complaints ...12

       D. Respondents Have Not Shown Compliance with the Subpoenas
          Would Be Unduly Burdensome ...............................................13

       E. Privacy Rights are Sufficiently Safeguarded by Statute and Do Not
          Justify Noncompliance with Subpoena ....................................15

V.     CONCLUSION .............................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell v. EPA*,
 232 F.3d 546 (7th Cir. 2000) ............................................................... 11

*Bradley v. Lumber Co. v. NLRB*,
 84 F.2d 97 (5th Cir. 1936) .................................................................... 14

*Diaz v. Am. Tel. & Tel.*,
 752 F.2d 1356 (9th Cir. 1985) ............................................................. 11

*E.E.O.C. v. Aaron Bros. Inc.*,
 620 F. Supp. 2d 1102 (C.D. Cal. 2009) .......................................... 11, 13

*E.E.O.C. v. Maryland Cup Corp.*,
 785 F.2d 471 (4th Cir. 1986) .......................................................... 13, 15

*E.E.O.C. v. Royal Caribbean Cruises, Ltd.*,
 771 F.3d 757 (11th Cir. 2014) ........................................................ 12, 13

*E.E.O.C. v. Schwan's Home Serv.*,
 644 F.3d 742 (8th Cir. 2011) ............................................................... 10

*EEOC v. Bay Shipbuilding Corp.*,
 668 F.2d 304 (7th Cir. 1981) ............................................................... 15

*EEOC v. Centura Health*,
 No. 18-1188, 2019 WL 3801376 (10th Cir. June 28, 2019) ................ 16

*EEOC v. Children's Hospital Medical Center*,
 719 F.2d 1426 (9th Cir. 1983) ......................................................... 6, 13

*EEOC v. Citicorp Diners Club*,
 985 F.2d 1036 (10th Cir. 1993) .......................................... 6, 13, 14, 15

*EEOC v. Cnty. of San Benito*,
 818 F. Supp. 289 (N.D. Cal. 1993) ...................................................... 16

*EEOC v. C & P Tel. Co.*,

iii

813 F. Supp. 874 (D.D.C. 1993) ................................................................... 6

*EEOC v. Eberspaecher N. Am. Inc.*,
   67 F.4th 1124 (11th Cir. 2023) ............................................................ 12

*EEOC v. Fed. Express Corp.*,
   558 F.3d 842 (9th Cir. 2009) ....................................................... 6, 7, 9, 10

*EEOC v. Grays Harbor Cmty. Hosp.*,
   791 F. Supp. 2d 1004 (W.D. Wash. 2011) ......................................... 9

*EEOC v. Kronos, Inc.*,
   620 F.3d 287 (3rd Cir. 2010) ......................................................... 6, 9

*EEOC v. McLane*,
   581 U.S. 72 (2017), *as revised* (Apr. 3, 2017) ............................ 6, 13

*EEOC v. McLane Co., Inc.*,
   857 F.3d 813 (9th Cir. 2017) ....................................................... 9, 10

*EEOC v. McLane Co. Inc.*,
   No. CV-12-02469-PHX-GMS, 2018 WL 1961162 (D. Ariz. Apr.
   26, 2018) ................................................................................. 14

*EEOC v. Md. Cup Corp.*,
   785 F.2d 471 (4th Cir. 1986) ......................................................... 6

*EEOC v. Quad/Graphics, Inc.*,
   63 F.3d 642 (7th Cir. 1995) ........................................................... 6

*EEOC v. Randstad*,
   685 F.3d 433 (4th Cir. 2012) ............................................... 10, 13, 15

*EEOC v. Sears, Roebuck & Co.*,
   885 F.2d 875 (9th Cir. 1989) ......................................................... 16

*EEOC v. Shell Oil Co.*,
   466 U.S. 54 (1984) ..............................................................*passim*

*EEOC v. Union Pac. R.R.*,
   867 F.3d 843 (7th Cir. 2017) ......................................................... 11

iv

*EEOC v. United Air Lines, Inc.,*
    287 F.3d 643 (7th Cir. 2002) ................................................................. 12, 13

*EEOC v. United Parcel Serv., Inc.,*
    859 F.3d 375 (6th Cir. 2017) ........................................................................ 16

*EEOC v. Univ. of New Mexico,*
    505 F.2d 1296 (10th Cir. 1974) ................................................................... 16

*FTC v. Texaco, Inc.,*
    555 F.2d 862 (D.C. Cir. 1977) ..................................................................... 14

*Garrett v. City and Cnty. of San Francisco,*
    818 F.2d 1515 (9th Cir. 1993) ...................................................................... 16

*Hazelwood School Dist. v. U.S.,*
    433 U.S. 299 (1977) ...................................................................................... 11

*Obrey v. Johnson,*
    400 F.3d 691 (9th Cir. 2005) ........................................................................ 11

*U.S. v. City of Torrance,*
    164 F.R.D. 493 (C.D. Cal. 1995) ................................................................. 11

*Univ. of Pa. v. EEOC,*
    493 U.S. 182 (1990) ................................................................................. 6, 15

**Statutes**

29 U.S.C. § 161 ...................................................................................................... 7

42 U.S.C. 2000e-5(b) ............................................................................................. 7

42 U.S.C. § 2000e-5 .............................................................................................. 7

42 U.S.C.§ 2000e-5(b) ..................................................................................... 7, 15

42 U.S.C. § 2000e-8(e) ......................................................................................... 15

42 U.S.C. § 2000e-8(a) ...................................................................................... 7, 9

**Other Authorities**

29 C.F.R. § 1601.11 ............................................................................................... 7

29 C.F.R. § 1601.12................................................................................................7

29 C.F.R. § 1601.16................................................................................................9

29 C.F.R. § 1601.16(a)..........................................................................................16

# I.      INTRODUCTION

Petitioner United States Equal Employment Opportunity Commission ("EEOC" or "the Commission") brings this subpoena enforcement action seeking an Order to Show Cause why EEOC's administrative subpoenas served on Vallarta Food Enterprises, Inc., Gonzalez Food Enterprises, Inc., Daniel Food Enterprises, Inc., Jalos Food Enterprises, Inc., Joya Food Enterprises, Inc., Santa Isabel Enterprises, Inc., and Zixta Enterprises, Inc. (collectively, "Respondents") should not be enforced. EEOC is currently investigating Charges of Discrimination against Respondents alleging they fail or refuse to recruit for employment, hire, or promote individuals based on their race (White, Black, and/or Asian) and their national origin (non-Hispanic), and subject individuals to different terms and conditions of employment based on their race (White, Black, and/or Asian) and their national origin (non-Hispanic) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et. seq*. ("Title VII"). Declaration of Ella Hushagen in Support of Petitioner U.S. Equal Employment Opportunity Commission's Application for Order to Show Cause Why Its Subpoenas Should Not Be Enforced ("Hushagen Decl."), ¶¶2-3.

In the course of its investigation, EEOC issued two (2) subpoena *duces tecum* (collectively, "the Subpoenas") seeking necessary documents and information. Hushagen Decl. at ¶19. Respondents petitioned the Commission to revoke the Subpoenas. *Id.* at ¶¶21-22.  The Commission determined Respondents are required to comply with the Subpoenas in their entirety. *Id.* at ¶25.  To date, Respondents have failed to provide the information and documents sought by EEOC's Subpoenas. *Id.* at ¶27.  Respondents' failure to comply has delayed and hampered EEOC's investigation of the charges.

The documents and information sought by the Subpoenas are relevant to EEOC's investigation. The Subpoenas are not overbroad. Respondents have not demonstrated compliance would be unduly burdensome. Therefore, EEOC

respectfully moves for issuance by this Court of an Order to Show Cause why the Subpoenas should not be enforced.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Vallarta Supermarkets Operate under Two Groups of Business Entities in Diverse California Communities

"Vallarta Supermarkets" are a chain of supermarkets in Southern and Central California. Hushagen Decl. at ¶9. The supermarkets are divided into two groups of business entities owned and operated by different members of the Gonzalez family. *Id.*  Respondents Jalos Food Enterprise, Inc., Joya Food Enterprise, Inc., Santa Isabel Enterprise, Inc., and Zixta Enterprise, Inc. are managed by Gonzalez Management Company, Inc. ("GMC Respondents"). *Id.* Respondents Vallarta Food Enterprises, Inc., Gonzalez Food Enterprises, Inc., and Daniel Food Enterprises, Inc., are owned and managed by Enrique Gonzalez, Enrique Gonzalez, Jr., and Alfredo Gonzalez ("EG Respondents"). *Id.*  These two groups of businesses are represented by separate counsel for purposes of EEOC's investigation. [1] *Id.*

### B.    EEOC Filed Commissioner's Charges to Investigate Vallarta Supermarkets.

On June 1, 2022, then-Vice Chair Samuels issued Commissioner's Charges of Discrimination against entities doing business as Vallarta. Hushagen Decl. at ¶3. The Commissioner's Charges allege Respondents fail or refuse to recruit for employment, hire, or promote individuals based on their race (White, Black, and/or Asian) and national origin (non-Hispanic), and subject individuals to different terms and conditions of employment based on their race (White, Black, and/or Asian) and national origin (non-Hispanic) in violation of Title VII. *Id.* at

---

[1]    Although EEOC's Charges against Respondents and the information EEOC seeks from them are the same, the two groups of Respondents have taken different positions and responded to requests for information at different times.

2

¶4.

To investigate the Charges' allegations, on August 8, 2022, the Commission issued initial Requests for Information ("RFI 1") seeking information regarding Respondents' operations, job descriptions, policies and procedures for recruitment and hiring, employees involved in recruitment and hiring, and training on recruitment and hiring.  Hushagen Decl. at ¶10.  On September 6, 2022, EEOC issued a second Request for Information ("RFI 2") seeking information regarding Respondents' applicant tracking systems. *Id.* at ¶12.  Subsequently, EEOC issued its third Request for Information ("RFI 3") seeking employee and applicant data housed in Respondents' applicant tracking systems and human resources systems for June 2020 to present. *Id.* at ¶¶15, 17.

### 1.   GMC Respondents

GMC Respondents provided information to EEOC in response to RFI 1 on September 30, 2022. Hushagen Decl. at ¶11. GMC Respondents did not respond to RFI 2, nor did they respond to EEOC's attempts to confer about RFI 2.  *Id.* at ¶13.

EEOC sent GMC Respondents RFI 3 seeking applicant and workforce data on July 5, 2024. *Id.* at ¶17. On July 19, 2024, GMC Respondents objected that the requests for information in RFI 3 invaded third-party privacy rights; sought proprietary, confidential, or private information; sought irrelevant information; and were overbroad and unduly burdensome. *Id.* at ¶18. Respondents provided documents and information regarding policies and procedures for recruiting and hiring, investigating complaints, trainings on diversity and internal biases, job advertisements, recruitment materials and information, and agendas for meetings with human resources. *Id.*

### 2.   EG Respondents

EG Respondents responded to EEOC's RFI 1 and RFI 2 on November 4, 2022. Hushagen Decl. at ¶14. EG Respondents provided documents and

information regarding policies and procedures for recruiting and hiring, investigating complaints, trainings on diversity and internal biases, job advertisements, recruitment materials and information, and agendas for meetings with human resources. *Id.* EG Respondents identified their Applicant Tracking System and their Human Resources Information System, and they produced information regarding the data fields in those systems. Hushagen Decl. at ¶14. EG Respondents did not produce information EEOC requested in RFI 1, specifically: training regarding recruitment and hiring, job descriptions, the identities and titles of officials involved in recruiting, hiring and promotion decisions, and national origin and race complaints. *Id.*

On January 17, 2023, EEOC issued RFI 3 to EG Respondents. Hushagen Decl. at ¶15. EG Respondents did not provide the information sought in RFI 3. *Id.* at ¶16. Instead, EG Respondents requested to confer regarding EEOC's requests for information on February 1, 2023. *Id.* EEOC met and conferred with EG Respondents by phone and email on March 19, May 16, June 24, July 8, July 17, and July 19, 2024. *Id.* EG Respondents failed to comply with EEOC's RFI 1 and RFI 3, and the Commission was unable to convince Petitioners to comply. *Id.*

**C.     EEOC Issued Enforceable Subpoenas to Respondents to Obtain Necessary Information.**

On September 5, 2024, EEOC served GMC Respondents Subpoena No. LA-24-134 seeking applicant and employee data from June 1, 2020 to present. Hushagen Decl. at ¶19; Exhibit A (GMC Subpoena). The data sought includes the applicant's name, mailing address, email address, phone number, date of application, date the application was viewed, location applied to, positions applied to, languages spoken, applicant ID, common ID, and other screening questions such as, are you able to perform the essential functions of the job. *Id.* The Subpoena also asked for each employee's name, company employer, ID number, mailing address, email address, phone numbers, hire date, pay rate,

hours/units, pay frequency, payroll status, salary/hourly, ethnic origin, employee status, job code, employee type, district, location, WC group, and common ID. *Id.*

On September 11, 2024, EEOC issued the EG Respondents Subpoena No. LA-24-135 seeking the same, as well as the information they failed to provide in response to EEOC's RFI 1, *i.e.*, trainings regarding recruitment and hiring, job descriptions, identities of employees involved in recruiting, hiring, and promotions, and information regarding race and national origin complaints. Hushagen Decl. at ¶20; Exhibit B (EG Subpoena).

Respondents timely sought revocation of the Subpoenas. Hushagen Decl. at ¶¶21-22. Respondents objected that the Subpoenas are overbroad and seeks irrelevant information, violates third-party privacy rights, and are unduly burdensome. *Id*. EG Respondents additionally objected that that the underlying Charges do not meet the pleading standard set out in *EEOC v. Shell Oil Co.,* and the Charges should be withdrawn pursuant to EEOC's Compliance Manual due to delays in the investigation. *Id*. at ¶22.

On March 7, 2025, the Commission denied Respondents' petitions to revoke the Subpoenas. Hushagen Decl. at ¶25.  The Commission found that Respondents' objections to the Subpoenas are meritless, and determined Respondents must comply with the Subpoenas in their entirety. *Id.* The Commission found the Subpoenas seek information relevant to investigation of the Charges.  *Id.* The Commission determined that third parties' privacy rights are appropriately protected, and do not exempt Respondents from complying with the Subpoenas. *Id.* The Commission found Respondents did not demonstrate that compliance with the Subpoenas would be unduly burdensome. *Id*.  Additionally, with respect to the EG Respondents' Petition to Revoke, the Commission determined that the Commissioner's Charges underlying the charges are valid, and not subject to withdrawal pursuant to the EEOC's Compliance Manual. *Id.*

### III.    LEGAL FRAMEWORK

Judicial review of an EEOC subpoena is very limited. *EEOC v. Fed. Express Corp.*, 558 F.3d 842, 848 (9th Cir. 2009) (citations omitted). "A district court's role in an EEOC subpoena enforcement proceeding . . . is a straightforward one." *EEOC v. McLane*, 581 U.S. 72, 76 (2017), *as revised* (Apr. 3, 2017) (citing *Univ. of Pa. v. EEOC,* 493 U.S. 182, 191 (1990)). "A district court is not to use an enforcement proceeding as an opportunity to test the strength of the underlying complaint. [] Rather, a district court should 'satisfy itself that the charge is valid and that the material requested is 'relevant' to the charge.'" *Id.* Courts should give "generous" construction to the term "relevant", *i.e.*, "virtually any material that might cast light on the allegations against the employer." *Id.* (citing *EEOC v. Shell Oil Co.,* 466 U.S. 54, 68-69 (1984)).

The judicial inquiry is narrow because "judicial review of early phases of an administrative inquiry results in interference with the proper functioning of the agency and delays resolution of the ultimate question whether the Act was violated." *Fed. Express Corp.*, 558 F.3d at 848-49 (citing *Shell Oil Co.*, 466 U.S. at 81 n. 38). Once a showing is made that the charge is valid and the information sought relevant to its investigation, a court will enforce the subpoena unless the respondent can prove that the subpoena is unduly burdensome. *McLane*, 581 U.S. at 76-77; *EEOC v. Quad/Graphics, Inc.*, 63 F.3d 642, 645 (7th Cir. 1995); *EEOC v. Citicorp Diners Club*, 985 F.2d 1036, 1040 (10th Cir. 1993); *EEOC v. Md. Cup Corp.*, 785 F.2d 471, 475-76 (4th Cir. 1986); *EEOC v. Children's Hospital Medical Center*, 719 F.2d 1426, 1428 (9th Cir. 1983), *overruled on other grounds in Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1303 (9th Cir. 1994); *EEOC v. C & P Tel. Co.*, 813 F. Supp. 874, 875 (D.D.C. 1993); *see also EEOC v. Kronos, Inc.*, 620 F.3d 287, 296 n.4 (3rd Cir. 2010) (listing five prerequisites for enforcement of agency subpoena).

6

## IV.    ARGUMENT

### A.    EEOC Acted Within its Statutory Authority.

Congress has authorized EEOC Commissioners to file charges of discrimination. 42 U.S.C.§ 2000e-5(b); 29 C.F.R. § 1601.11. Congress has vested EEOC with broad powers to fulfill its investigatory responsibilities, authorizing EEOC to subpoena any information that relates to any matter under investigation. 29 U.S.C. § 161 (incorporated into Title VII by 42 U.S.C. § 2000e-9); *see* 42 U.S.C. § 2000e-5, as referenced in 42 U.S.C. § 2000e-8(a).

EEOC is investigating former Vice-Chair Samuels' Charges alleging that Respondents fail or refuse to recruit, hire and promote non-Hispanic workers into all positions based on race and national origin, and subject non-Hispanic workers to different terms and conditions of employment based on race and national origin in violation of Title VII. The investigation is within the agency's statutory authority and Congressional mandate, which empowers the EEOC to subpoena the evidence sought which relates to the allegations in the Charges. EEOC acted within its statutory authority by issuing the Subpoenas.

### B.    EEOC Fulfilled the Procedural Prerequisites for the Issuance of the Subpoenas Served on Respondents.

An enforceable subpoena is 1) issued pursuant to a valid charge, and 2) procedurally valid. *Shell Oil Co.*, 466 U.S. at 65; *Fed. Express Corp.*, 558 F.3d at 848. It is beyond dispute that these threshold requirements are satisfied here.

First, the underlying charges are valid. A valid charge must include, among other things, the name and contact information of the respondent employer and a statement of the facts with dates alleging "unlawful employment practices." 42 U.S.C. 2000e-5(b); 29 C.F.R. § 1601.12. A charge is "not the equivalent of a complaint initiating a lawsuit," and thus not held to the same standards. *Shell Oil Co.*, 466 U.S. at 68. Commissioners are not required to "specify the persons discriminated against, the manner in which they were injured, and the dates on

which the injuries occurred" because such a requirement would "radically limit the ability of the EEOC to investigate allegations of patterns and practices of discrimination." *Id*. at 70. Where the Commission alleges the employer has a pattern or practice of discrimination:

> [T]he Commissioner should identify the groups of persons that he has reason to believe have been discriminated against, the categories of employment positions from which they have been excluded, the methods by which the discrimination may have been effected, and the periods of time in which he suspects the discrimination to have been practiced.

*Id.* at 73.

The Commissioner's Charges identify the Respondent employers and their corporate headquarters and provide a statement of the facts, dates, and allegations of unlawful employment practices. Hushagen Decl. ¶¶3, 4, 6. The Charges identify the groups of persons EEOC alleges Respondents discriminated against: White, Black, Asian, and non-Hispanic applicants and employees. *Id*. at ¶4.  The Charges specify that Respondents' discrimination has affected "all positions" since June 2020, and describe Respondents' discriminatory methods: failure to recruit, hire, or promote, and discriminatory terms and conditions of employment. *Id*. at ¶¶4, 5, 7. The Commissioner's Charges are adequate. [2]

Second, the Subpoenas are procedurally valid. A procedurally valid EEOC subpoena must "state the name and address of its issuer, identify the person or

---

[2]     To the extent Respondents argue that the Charges are inadequate or should be withdrawn based on the EEOC's Compliance Manual, this is unsupported by law.  The Compliance Manual provides guidance to the EEOC but does not modify the EEOC's authority nor create additional requirements for charges or investigations.  The EEOC's decisions during the investigative process and whether it adhered to the Compliance Manual is not subject to judicial review. EEOC is the expert on implementation of its own manuals and guidance. *See*, *e.g.*, *EEOC v. Grays Harbor Cmty. Hosp.*, 791 F. Supp. 2d 1004, 1006, 1009

evidence subpoenaed, the person to whom and the place, date, and the time at which it is returnable or the nature of the evidence to be examined or copied, and the date and time when access is requested." 29 C.F.R. § 1601.16. The subpoena must be returnable to a duly authorized investigator or other representative of the Commission. *Id.*

EEOC's Subpoenas state the name and address of the agency issuing the subpoena, identify Respondents as the subpoenaed parties, and identify with specificity the documents and information to be produced and the time and place of production. Hushagen Decl. at ¶¶19-20; Exhibits A and B. The Subpoenas are returnable to a duly authorized EEOC Investigator. *Id*. Therefore, EEOC has satisfied the procedural requirements for enforcement of the Subpoenas.

## C.    The Subpoenas Seek Information and Documents Relevant to the Investigation of the Charges of Discrimination.

Title VII empowers the EEOC to seek in its investigation "any evidence of any person being investigated . . . that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a). The term "relevant" in Title VII encompasses "virtually any material that *might* cast light on the allegations against the employer." *Shell Oil Co.,* 466 U.S. at 68-69 (1984); *EEOC v. McLane Co., Inc*., 857 F.3d 813, 815 (9th Cir. 2017); *Express Corp*., 558 F.3d at 854. "[T]he EEOC's investigatory power is broader than the four corners of the charge; it encompasses not only the factual allegations contained in the charge, but also any information that is relevant to the charge." *Kronos Inc.*, 620 F.3d at 299. EEOC is not limited to information and documents that are specifically relevant to proving discrimination, either. The requested information need only be relevant "*to the investigation*" and/or whether

(W.D. Wash. 2011) (finding EEOC is "master of its case" and rejecting request to throw out settlement based on alleged violations of Regional Attorney's Manual). EEOC notes the issue in case Respondents attempt to raise it here.

9

reasonable cause exists to believe the charge allegations are true. *Fed. Express Corp.*, 558 F.3d at 855 (emphasis in original); *McLane Co., Inc.,* 857 F.3d at 815; *see EEOC v. Randstad*, 685 F.3d 433, 449 (4th Cir. 2012) (courts do not assess the merits of the underlying charge in administrative subpoena actions). Thus, the relevancy standard that applies to an EEOC investigation "sweeps more broadly" than relevance during litigation. *See McLane Co., Inc.*, 857 F.3d at 815; *Fed. Express Corp*., 558 F.3d at 854.  The information EEOC seeks in the Subpoenas is relevant to EEOC's investigation of the Charges, as it will assist the EEOC in evaluating whether there is reasonable cause to believe Respondents fail to recruit, hire, or promote non-Hispanic individuals, and treat non-Hispanic employees differently in the terms and conditions of their employment.

### 1.   Applicant and Employee Data

Request Nos. 1 and 2 of the Subpoenas seek applicant and employee data. Hushagen Decl. at ¶¶19-20; Exhibits A and B. Respondents' objections that the Subpoenas are overbroad and seeks irrelevant information lack merit. The Charges allege Respondents fail to recruit, hire, or promote non-Hispanic individuals, and treat non-Hispanic employees differently in the terms and conditions of their employment. *Id*. at ¶4.  EEOC seeks data regarding Respondents' applicants and employees, including information relating to their race and national origin. The applicant and employee data will allow EEOC to examine whether Respondents' recruitment, hiring and promotion practices are neutral as to race and national origin, and to determine whether there is statistical evidence of discrimination.

Applicant and employee data are "relevant to the determination of whether [employers] illegally discriminate[] against" individuals based on race or national origin. *E.E.O.C. v. Schwan's Home Serv*., 644 F.3d 742, 748 (8th Cir. 2011) (enforcing subpoena for gender information of employees where underlying charge revealed potential systemic gender discrimination); *E.E.O.C. v. Aaron*

10

*Bros. Inc.*, 620 F. Supp. 2d 1102, 1106, 1109 (C.D. Cal. 2009) (enforcing subpoena for nationwide data in investigating gender discrimination); *U.S. v. City of Torrance,* 164 F.R.D. 493, 494 (C.D. Cal. 1995) (in Title VII hiring case, court compelled production of "applications, testing, and hiring data"); *EEOC v. Union Pac. R.R.*, 867 F.3d 843, 852 (7th Cir. 2017) (in investigation alleging race discrimination affected promotion decisions, EEOC was entitled to company-wide information about the test administered and personnel information about successful and unsuccessful applicants who sought promotion).

Analyses of Respondents' applicant and employee data will be useful in determining whether there is statistical evidence of discrimination—a key method of proof in cases alleging a pattern or practice of discrimination.[3] *See Hazelwood School Dist. v. U.S.*, 433 U.S. 299, 308 (1977) ("[G]ross statistical disparities" alone in the treatment of a protected class may be sufficient prima facie proof of a pattern or practice of discrimination."); *Obrey v. Johnson*, 400 F.3d 691, 694–95 (9th Cir. 2005) (statistics alone may support a finding of a pattern or practice); *Diaz v. Am. Tel. & Tel.,* 752 F.2d 1356, 1362-64 (9th Cir. 1985) (explaining the import of statistical evidence in pattern-or-practice hiring cases); *Bell v. EPA*, 232 F.3d 546, 552-553 (7th Cir. 2000) ("In a pattern and practice disparate treatment case, statistical evidence constitutes the core of a plaintiff's prima facie case"). Applicant and employee data will probe the Commission's allegations that Respondents fail or refuse to recruit, hire and promote non-Hispanic workers.

Respondents' attempts to liken the Subpoenas at issue here to the one at issue in *EEOC v. Eberspaecher N. Am. Inc.*, 67 F.4th 1124 (11th Cir. 2023), are unavailing. In *Eberspaecher*, the court declined to enforce an administrative

---

[3]    To the extent Respondents do not collect race and national origin information at the application stage, EEOC is capable of analyzing the requested data utilizing statistically-sound methods with a high degree of reliability, even when some portions of applicant and workforce data are missing. *Id*. at ¶23.

subpoena that was broader than the scope of the underlying Commissioner's Charge. There, the Commissioner's Charge was directed to only one of the employer's facilities, but the subpoena sought nationwide data. *Id*. at 1133. Here, the scope of the Commissioner Charges is companywide; they are not limited to particular stores. Hushagen Decl. at ¶7. Nor is this case similar to *E.E.O.C. v. Royal Caribbean Cruises, Ltd*., 771 F.3d 757 (11th Cir. 2014). There, the employer admitted it terminated the aggrieved charging party due to his medical diagnosis; accordingly, the Court held classwide statistical data was not necessary "to determine whether an employer's facially neutral explanation" was pretextual. *Id.* at 761. Here, an EEOC Commissioner brought charges alleging systemic, classwide discrimination against White, Black Asian, and non-Hispanic applicants and employees on the basis of race and national origin. Classwide data is relevant and necessary to investigate these charges. *Cf. EEOC v. United Air Lines, Inc*., 287 F.3d 643, 655 (7th Cir. 2002) (where "[n]othing in the charge suggests systemic discrimination[,]" subpoena for classwide data was not relevant to investigation of individual's charge).

>    2.    <u>Training, Job Descriptions, Hiring Officials, and Complaints.</u>

Request Nos. 3-8 of the EG Subpoena seek Respondents' training regarding recruitment and hiring (no. 3); job descriptions (no. 4); the identities of Respondents' officials involved in recruiting, hiring and promotion decisions (nos. 5-7), and; information regarding national origin and race complaints submitted to Respondents (no. 8). Hushagen Decl. at ¶20; Exhibit B. EG Respondents objected to Request Nos. 3-8 in the Subpoena, arguing they already provided sufficient information, and that EEOC's investigator did not confer before issuing a subpoena. *Id.* at ¶22.

The information EEOC seeks is plainly relevant to EEOC's investigation as to the allegations that Respondents fail or refuse to recruit, hire, and promote non-Hispanic workers. Requests Nos. 3-7 go to the heart of the allegations while

Request No. 8 is crucial evidence to point to whether Respondents were previously on notice of discrimination towards non-Hispanic workers.

Accordingly, the Commission overruled Respondents' objections to these requests, found they had failed to adequately comply, and instructed them to turn over the information sought. Hushagen Decl. at ¶25.

### D. Respondents Have Not Shown Compliance with the Subpoenas Would Be Unduly Burdensome.

Respondents objected that compliance with the Subpoenas would be unduly burdensome. The Subpoenas seek relevant information. *Supra* § C. Respondents must comply unless they can prove compliance with the Subpoenas is unduly burdensome. *Children's Hospital Medical Center*, 719 F.2d at 1428; *see McLane*, 581 U.S. at 77; *cf. Royal Caribbean*, 771 F.3d at 760-762 (holding classwide information was not relevant to resolution of individual charge of discrimination, and thus burden to comply with subpoena was undue).

To establish undue burden, the employer must show that to comply with the subpoena would "threaten" or "seriously disrupt" the company's normal business operations. *See, e.g., CitiCorp Diners Club, Inc.*, 985 F.2d at 1040 (citing *E.E.O.C. v. Maryland Cup Corp.*, 785 F.2d 471, 477 (4th Cir. 1986)); *E.E.O.C. v. Aaron Brothers, Inc.*, 620 F.Supp.2d 1102, 1106 (C.D. Cal. 2009). Undue burden may be shown by comparing the cost of compliance to gather the information with the company's normal operating costs. *Randstad*, 685 F.3d at 451. "Conclusory allegations of burdensomeness are insufficient." *United Air Lines, Inc.*, 287 F.3d at 653; *see Randstad*, 685 F.3d at 451 (holding the burden of proving undue burden is not easily met). "The presumption is that compliance should be enforced to further the agency's legitimate inquiry into matters of public interest." *United Air Lines, Inc.*, 287 F.3d at 653.

GMC Respondents have not meaningfully attempted to meet their burden of establishing compliance with the Subpoena would be unduly burdensome.

13

GMC Respondents merely assert that complying with the Subpoena would require diverting employees from their typical duties to focus on the task. Hushagen Decl. at ¶21. They have not articulated why employees would need to be diverted to review files, how many employees, for how long, nor demonstrated that it would disrupt their normal business operations.

EG Respondents have not identified a significant burden associated with Subpoena compliance. Rather EG Respondents have identified that applicant and employee data is maintained between two different software systems that cannot be linked or easily paired with the other. Hushagen Decl. at ¶22. However, EEOC's subpoena does not require EG Respondents to link the two databases to create information that does not exist, *i.e.*, common identifiers. EEOC contends that Respondents should be able to export employee and applicant information from their software systems—irrespective of whether the data are linked. Notably, EG Respondents have not represented that this capability is not available from either system. *Id.* at ¶22. EEOC understands that the applicant and employee data is exportable given the applicant and employee software being used. *Id.* at ¶24; *see EEOC v. McLane Co. Inc.*, No. CV-12-02469-PHX-GMS, 2018 WL 1961162, at *3 (D. Ariz. Apr. 26, 2018) (ordering production of personnel information easily accessible via software). EG Respondents have not identified any other supposed burdens associated with Subpoena compliance. *Id.* at ¶22.

Mere inconvenience is insufficient to establish the undue burden needed to avoid enforcement of a subpoena. *See CitiCorp Diners Club, Inc.*, 985 F.2d at 1040. "Some burden on subpoenaed parties is to be expected and is necessary in the furtherance of the agency's legitimate inquiry and the public interest." *FTC v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C. Cir. 1977); *see also Bradley v. Lumber Co. v. NLRB*, 84 F.2d 97, 100 (5th Cir. 1936) (an investigation may "cause some inconvenience" but that is "part of the social burden of living under government"). A showing that compliance would require some costs and

employee time is insufficient to show the subpoena imposes an undue burden. *E.g., Randstad*, 685 F.3d at 452 (undue burden was not established where compliance with the subpoena would require three employees working 40 hours each with estimated labor costs of $14,000-$19,000); *CitiCorp Diners Club, Inc.*, 985 F.2d at 1040 (undue burden was not established with an affidavit that compliance with the subpoena would require two full-time employees working approximately six months to review the personnel files of 1,100 employees); *Maryland Cup Corp.*, 785 F.2d at 479 (undue burden was not met with a showing that compliance with the subpoena would cost $75,000). Respondents have not met their burden to establish that compliance with the Subpoenas would be unduly burdensome.

### E.    Privacy Rights are Sufficiently Safeguarded by Statute and Do Not Justify Noncompliance with Subpoena.

Respondents argue that the Subpoenas violate the privacy rights of applicants and third parties. Hushagen Decl. at ¶¶21-22. But privacy rights of third parties are adequately protected by EEOC's governing statutes.

EEOC is prohibited from disclosing information obtained under its investigatory authority. *Univ. of Pa.*, 493 U.S. at 192 (Congress addressed "situations in which an employer may have an interest in the confidentiality of its records" by requiring confidentiality of information provided during EEOC investigations). Title VII imposes strict duties on EEOC and its employees to maintain the confidentiality of information learned during investigations and conciliation. 42 U.S.C. §§ 2000e-5(b), 2000e-8(e). The statute provides for criminal penalties for EEOC employees who reveal information in violation of these provisions. *Id.; EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 312 (7th Cir. 1981) ("[C]onfidentiality is no excuse for noncompliance [with an EEOC subpoena] since Title VII imposes criminal penalties for EEOC personnel who publicize information obtained in the course of investigating charges of

15

employment discrimination."). Respondents cannot legitimately refuse to provide information based on third-party privacy rights given EEOC's statutory mandate to keep its investigative records confidential.

Applicant and employee data are subject to EEOC's subpoena power. *Supra* § C.1. Further, EEOC's federal mandate preempts any state law recognizing a right to privacy over business or personnel information. *Garrett v. City and Cnty. of San Francisco*, 818 F.2d 1515, 1519 n.6 (9th Cir. 1993); *EEOC v. Sears, Roebuck & Co.*, 885 F.2d 875 (9th Cir. 1989); *EEOC v. Cnty. of San Benito*, 818 F. Supp. 289, 291 (N.D. Cal. 1993). And to the degree there exists a federal right to privacy over some information, the Subpoenas here would not implicate any such protections because the information requested is relevant to an investigation authorized by federal statute. *See EEOC v. Univ. of New Mexico*, 505 F.2d 1296, 1303 (10th Cir. 1974); 29 C.F.R. § 1601.16(a). Accordingly, courts order respondents to produce relevant documents containing information much more private than the information sought by the Subpoenas. *See, e.g., Sears, Roebuck & Co.*, 885 F.2d 875; *EEOC v. Centura Health*, No. 18-1188, 2019 WL 3801376, at *4 (10th Cir. June 28, 2019) (ordering production of reasonable accommodation requests by other employees); *EEOC v. United Parcel Serv., Inc.*, 859 F.3d 375, 379 (6th Cir. 2017) (ordering production of other employees' medical information).

## V. CONCLUSION

For the foregoing reasons, EEOC respectfully requests that the Court: issue an Order directing Respondents to appear to show cause, if any, why an Order should not be issued directing Respondents to fully comply with the Subpoenas; issue an Order directing Respondents to comply with the Subpoenas, upon return

///

///

///

16

of the Order to Show Cause; and grant EEOC its costs and such further relief as may be necessary and appropriate.

Dated:  July 2, 2025                    Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

By:    */s/ Ella Hushagen*
Ella Hushagen
Attorney for Petitioner

17