UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Petitioner,<br><br>v.<br><br>VALLARTA FOOD ENTERPRISES, INC., et al.,<br><br>Respondents. | Case No. 2:25-mc-00058-MCS-SSC<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
|---|---|

The Court submits this Report and Recommendation to the Honorable Mark C. Scarsi, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**REPORT**

Petitioner U.S. Equal Employment Opportunity Commission filed an application to show cause why its two administrative subpoenas served on Respondents should not be enforced. As Petitioner has agreed to narrow several categories within the subpoenas, the Court finds that the narrowed subpoenas seek relevant information that is neither overbroad nor unduly burdensome. The Court recommends ordering Respondents to produce all requested data. In doing so, the

Court does not pass on the propriety of the investigation nor speculate on its outcome, but instead executes its limited procedural role.

**I**

This investigation does not arise from a report of alleged discrimination by an employee or job applicant. Instead, as detailed below, it is a commission-led investigation the impetus for which was an examination of Respondents' own data produced as part of their regulatory obligations.

Respondents operate a chain of Vallarta supermarkets in California specializing in Latin American foods. (ECF 1-1 at 8; ECF 12 at 5.) Two separate groups of Respondents own and operate the supermarkets. (ECF 1-1 at 8.) GMC Respondents (Jalos Food Enterprises, Inc., Joya Food Enterprises, Inc., Santa Isabel Enterprises, Inc., and Zixta Enterprises, Inc.) are managed by Gonzalez Management Company, Inc. (*Id.*) VFE Respondents (Vallarta Food Enterprises, Inc., Gonzalez Food Enterprises, Inc., Daniel Food Enterprises, Inc.) are managed by Enrique Gonzalez, Enrique Gonzalez, Jr., and Alfredo Gonzalez.[1] (*Id.*)

On June 1, 2022, Commissioner's charges were issued against Respondents. (ECF 1-2 at 2; ECF 12-2.) The Equal Employment Opportunity Commission (EEOC) had data based on Respondents' EEO-1 reports showing that "they maintain a nearly homogenous Hispanic workforce in their stores." (ECF 13 at 4; ECF 14 at 6.) Further, with respect to GMC Respondents' stores, the percentage of

---

[1] GMC Respondents and VFE Respondents are represented by separate counsel for purposes of the EEOC's investigation. (ECF 1-1 at 8.)

2

1  Hispanic workers is "higher than the percentage of Hispanic residents
2  in the cities where those stores are located." (ECF 13 at 4.)

3  The charges allege that, since at least June 1, 2020, Respondents
4  failed or refused to recruit, hire, or promote individuals based on their
5  race (White, Black, and/or Asian) and national origin (non-Hispanic),
6  and subjected such individuals to different terms and conditions of
7  employment in violation of Title VII of the Civil Rights Act of 1964
8  (Title VII). (ECF 1-2 at 2; ECF 12-2.) As part of its investigation, the
9  EEOC issued and served Subpoena No. LA-24-134 to GMC Respondents
10 on September 5, 2024, and served Subpoena No. LA-24-135 on VFE
11 Respondents on September 11, 2024. (ECF 1 at 2.)

12 Both subpoenas seek applicant data. For all applicants who
13 applied to Respondents since June 1, 2020, the subpoenas seek their
14 names, contact information, information about when, where, and for
15 what position they applied, languages spoken, whether they meet the
16 job requirements, whether they have previously worked at the
17 company, and whether any of their relatives work for the company.
18 (ECF 1-3 at 6–7; ECF 1-4 at 6–7.) Both subpoenas also seek "a common
19 ID to link employee data to the requested applicant data" (ECF 1-3 at 7;
20 ECF 1-4 at 7), but the EEOC has since indicated that it is not requiring
21 VFE Respondents to link their applicant and employee databases.
22 (ECF 14 at 11.) At oral argument on September 9, 2025, the EEOC
23 indicated that it would not require GMC Respondents to do so if it
24 would also be an issue for them.

25 Both subpoenas also seek employee data. For all employees who
26 work or worked for Respondents since June 1, 2020, the subpoenas
27 request their names, contact information, hire date, pay information,
28 hours, ethnic origin, employee status, job code, employee type, district,

3

1  location/store, company, and workers' compensation group.  (ECF 1-3 at
2  7–8; ECF 1-4 at 7–8.)  The EEOC has since indicated that, "[i]n the
3  interest of compromise" it "will forgo its request for employees' workers'
4  compensation group."  (ECF 14 at 10.)

5       Subpoena LA-24-135 also seeks from VFE Respondents: (1)
6  information about training relating to recruitment and/or hiring since
7  June 1, 2020; (2) job descriptions for all positions since June 1, 2020; (3)
8  contact information for all employees involved in employee recruitment,
9  hiring, and promotion processes; and (4) information for all
10 discrimination complaints based on race and/or national origin filed by
11 an employee or applicant.  (ECF 1-4 at 8–9.)

12      Respondents petitioned administratively to revoke the subpoenas.
13 (ECF 1 at 3.)  On March 7, 2025, the EEOC denied Respondents'
14 petitions to revoke the subpoenas and determined that Respondents
15 were required to comply with the subpoenas in their entirety by April
16 10, 2025.  (*Id.*; ECF 1-1 at 11.)  To date, Respondents have not produced
17 responsive information.

18      On July 2, 2025, the EEOC began judicial proceedings, filing an
19 application to show cause why its two administrative subpoenas served
20 on GMC Respondents and VFE Respondents should not be enforced.
21 (ECF 1.)  On July 15, 2025, the Court ordered the EEOC to serve the
22 application on Respondents, along with the Court's order, and to file
23 proofs of service.  (ECF 4.)  Following the Court's granting of extensions
24 to file the proofs of service and rescheduling of briefing deadlines,
25 Respondents timely filed their oppositions (ECF 10; ECF 12), and the
26 EEOC timely filed its replies (ECF 13; ECF 14).  The Court held a
27 hearing on the application on September 9, 2025.  On September 16,
28 2025, having been apprised on an imminent data migration, the Court

4

1 ordered that GMC Respondents preserve the requested electronic data
2 for production pending further order of this Court resolving the
3 production dispute. (ECF 18.)

## II

5 The EEOC bears the "primary responsibility for enforcing Title
6 VII[,]" which prohibits discrimination in employment on the basis of
7 "race, color, religion, sex, or national origin." *EEOC v. Fed. Express*
8 *Corp.*, 558 F.3d 842, 849 (9th Cir. 2009); 42 U.S.C. § 2000e-2. The filing
9 of a charge of discrimination begins an investigation whether that
10 charge is filed by an aggrieved person, or, as here, the charge is filed by
11 a member of the Commission. *See Univ. of Pa. v. EEOC*, 493 U.S. 182,
12 190 (1990); 42 U.S.C. § 2000e-5(b). Within ten days, the EEOC must
13 serve notice of the charge on the employer. 42 U.S.C. § 2000e-5(b).
14 "After a charge has been filed, the EEOC conducts an
15 investigation of the allegations contained therein . . . [i]n connection
16 with [which] the Commission is entitled to inspect and copy 'any
17 evidence of any person being investigated or proceeded against that
18 relates to unlawful employment practices covered by [Title VII] and is
19 relevant to the charge under investigation.'" *EEOC v. Shell Oil Co.*, 466
20 U.S. 54, 63 (1984) (quoting 42 U.S.C. § 2000e-8(a)). Pursuant to its
21 authority under 29 U.S.C. § 161, incorporated into Title VII by 42
22 U.S.C. § 2000e-9, the EEOC can issue administrative subpoenas and
23 seek judicial enforcement of those subpoenas.
24 Judicial review of an EEOC subpoena is "quite narrow." *Fed.*
25 *Express Corp.*, 558 F.3d at 848. A court must determine: "(1) whether
26 Congress has granted the authority to investigate; (2) whether
27 procedural requirements have been followed; and (3) whether the
28 evidence is relevant and material to the investigation." *EEOC v. Karuk*

*Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001). The EEOC must show that these three conditions are met. *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc), *overruled on other grounds as recognized in Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1303 (9th Cir. 1994)).

Judicial enforcement of an EEOC subpoena turns on "whether the evidence sought is relevant to the specific charge or whether the subpoena is unduly burdensome in light of the circumstances." *McLane Co. v. EEOC*, 581 U.S. 72, 73 (2017), *as revised* (Apr. 3, 2017). Respondents bear the burden of showing that compliance would cause an undue burden. *EEOC v. McCormick & Schmick's*, 2007 WL 1430004, at *7 (N.D. Cal. May 15, 2007).

### III

Respondents advance four arguments to challenge judicial enforcement of the subpoenas. The Court will address each in turn.

### A

First, VFE Respondents argue that the EEOC's charges lack specificity and therefore do not meet the standard set by the Supreme Court in *Shell Oil*. (ECF 12 at 7–9.) The Court disagrees.

It is a "jurisdictional prerequisite" to judicial enforcement of an EEOC subpoena that the charges meet the requirements set forth in § 706(b) of Title VII, 42 U.S.C. § 2000e-5(b). *Shell Oil*, 466 U.S. at 65. "The statute itself prescribes only minimal requirements pertaining to the form and content of charges of discrimination, [stating] that '[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires.'" *Id*. at 67 (quoting 42 U.S.C. § 2000e-5(b)).

Case 2:25-mc-00058-MCS-SSC     Document 20     Filed 10/10/25     Page 7 of 18     Page ID #:558

The EEOC's implementing regulations provide that each charge should contain, among other information, "[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices[.]" 29 CFR § 1601.12(a)(3). In *Shell Oil*, the Supreme Court interpreted this language to mean that charges "should identify [1] the groups of persons that [the Commissioner] has reason to believe have been discriminated against, [2] the categories of employment positions from which they have been excluded, [3] the methods by which the discrimination may have been effected, and [4] the periods of time in which [the Commissioner] suspects the discrimination to have been practiced." *Id.* at 73 (construing the language in 29 CFR § 1601.12(a)(3) (1983), which has remained unchanged in subsequent amendments to the regulation). "A district court is not to use an enforcement proceeding as an opportunity to test the strength of the underlying complaint." *McLane*, 581 U.S. at 76; *see also EEOC v. Dean Witter Co.*, 643 F.2d 1334, 1338 (9th Cir. 1980) (explaining that 42 U.S.C. § 2000e-5(b) "impose[s] no strict technical pleading requirement upon complainants").

Here, the parties do not dispute that the EEOC complied with the procedural requirements of 42 U.S.C. § 2000e-5, such as timely notice to Respondents. Further, the Court finds that the EEOC's charges meet the "jurisdictional prerequisite" to judicial enforcement. *See Shell Oil*, 466 U.S. at 65. The charges are sufficient because they (1) identify White, Black, Asian, and non-Hispanic applicants and employees as the group of persons believed to have been discriminated against; (2) state that this discrimination has been with respect to all positions; (3) explain how these applicants and employees have been excluded— through Respondents' failure or refusal to recruit, hire, and promote

7

1 such applicants and employees and by Respondents subjecting such
2 workers to different terms and conditions of employment; and (4)
3 provide a time frame—June 2020 to the present. (*See* ECF 12-2 at 2.)
4 That the identified group of affected applicants and employees may be
5 large does not mean that the subpoenas run afoul of *Shell Oil*.
6 Accordingly, the EEOC's investigation is within its statutory authority.

## B

8  Second, Respondents contend that the charges are invalid because
9 they violate Executive Order 14281, which provides that federal policy
10 is "to eliminate the use of disparate-impact liability" and mandates that
11 the EEOC "assess all pending investigations . . . that rely on a theory of
12 disparate-impact liability[.]" (ECF 10 at 10–11; ECF 12 at 9–11.) *See*
13 Exec. Order. No. 14,281, 90 Fed. Reg. 17537, §§ 2, 6(a) (Apr. 23, 2025).
14  Respondents provide no authority for court intervention based on
15 this Executive Order. Even assuming this Court could decline to
16 enforce the subpoenas on this basis, the EEOC maintains that it is
17 investigating whether Respondents intentionally discriminate against
18 White, Black, Asian, and non-Hispanic individuals with respect to
19 recruitment, hiring, promotion, and terms of employment. (ECF 14 at
20 5.) As such, the EEOC's charges relate to disparate treatment, not
21 disparate impact. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S.
22 324, 335 n.15 (distinguishing claims of disparate treatment from claims
23 of disparate impact and explaining that proof of discriminatory motive
24 is required for claims of disparate treatment but not required under a
25 disparate-impact theory).

## C

27  Third, Respondents assert that the subpoenas seek irrelevant
28 information, are overbroad, and are unduly burdensome. (ECF 10 at

8

1 11–13, 14–16; ECF 12 at 11–23.)  These concepts are intertwined and
2 context-specific.

**1**

Courts have given the term "relevant" a "generous construction" in this context.  *McLane*, 581 U.S. at 76 (citing *Shell Oil*, 466 U.S. at 68).  "The relevance limitation imposed by § 2000e-8(a) 'is not especially constraining'" and "encompasses 'virtually any material that might cast light on the allegations against the employer.'"  *EEOC v. McLane Co.*, 857 F.3d at 815 (quoting *Shell Oil*, 466 U.S. 68–69).

GMC Respondents argue that "the extensive personal information about all Respondents' applicants is not relevant" and that "[f]ormer applicants along with current and former rank-and-file employees would not be able to provide any relevant information regarding the implementation of policies and practices[.]"  (ECF 10 at 15–16.)  GMC Respondents also emphasize that they have provided "extensive information about their hiring practices, along with the process outlining how applicants are reviewed and ultimately hired[.]"  (*Id.* at 15.)

VFE Respondents take issue with what they describe as the EEOC's request for information about applicants' ages, whether applicants had any relatives work for VFE Respondents, applicants' previous work experience with VFE Respondents, whether applicants can perform the essential functions of the position, employees' pay frequency, employees' payroll status, and employees' workers' compensation group.[2]  (ECF 12 at 12.)  VFE Respondents maintain that

---

[2] The subpoenas do not request applicants' ages.  (ECF 1-3; ECF 1-4.)  As noted above, the EEOC has since indicated that it no longer requests employees' workers' compensation group.  (ECF 14 at 10.)

9

they do not track race or national origin at the applicant stage, and thus information about applicants is not probative of discrimination. (*Id.* at 13.)  VFE Respondents further object to the request for all job descriptions based on relevance.  (*Id.* at 16.)

      Here, the Court finds that the information sought by the EEOC is relevant to its investigation.  For applicants, the EEOC has requested information such as their names, contact information, information about when, where, and for what position they applied, languages spoken, whether they meet the job requirements, whether they have previously worked at the company, and whether any of their relatives work for the company.  (ECF 1-3 at 6–7; ECF 1-4 at 6–7.)  For employees, the EEOC has requested information such as their names, contact information, hire date, pay information, hours, ethnic origin, employee status, job code, employee type, district, location/store, and company.  (ECF 1-3 at 7–8; ECF 1-4 at 7–8.)  Such applicant and employee data is relevant to the EEOC's investigation because it will allow the EEOC to conduct statistical analyses and to interview applicants and employees, which may cast light on the allegations against Respondents.  (ECF 13 at 3; ECF 14 at 9.)  Contact information is relevant because the personal experiences of applicants and employees with the company supplement statistical information.  *See Int'l Bhd. of Teamsters*, 431 U.S. at 339 (describing how individuals' testimony about their experiences with the company, introduced in addition to statistics, "brought the cold numbers convincingly to life"); *see also McLane*, 857 F.3d at 815–16 (explaining how contacting employees and applicants "might cast light" on the allegations of discrimination); *EEOC v. Nationwide Janitorial Servs., Inc.*, 2018 WL 4563053, at *4 (C.D. Cal. Aug. 17, 2018) (concluding "that employee

1  contact information is relevant to the Commission's legitimate
2  investigation"). Information about familial relationships is relevant
3  because these connections could result in preferential treatment
4  contributing to workforce homogeneity. (ECF 14 at 9.) Payroll
5  information is relevant for the estimation of damages. (*Id.* at 9–10.)
6        The additional information requested from VFE Respondents is
7  also relevant. Training materials and contact information for
8  employees involved in recruitment, hiring, and promotion will allow the
9  EEOC to investigate whether Respondents discriminate against White,
10 Black, Asian and/or non-Hispanic applicants and employees through
11 these processes. Previous discrimination complaints filed by applicants
12 or employees based on race and/or national origin, if these complaints
13 exist, would be relevant because the details of such complaints would
14 cast light on the allegations of discrimination against Respondents and
15 perhaps show how Respondents respond to discrimination complaints.

**2**

17 Although relevancy is generously construed, an EEOC
18 administrative subpoena may not "be so broad so as to be in the nature
19 of a fishing expedition." *EEOC v. Aaron Bros., Inc.*, 620 F. Supp. 2d
20 1102, 1105 (C.D. Cal 2009) (quoting *Peters v. United States*, 853 F.2d
21 692, 700 (9th Cir. 1988)). "There must be a realistic expectation that
22 something may be discovered." *Id.* (citing *EEOC v. United Air Lines,*
23 *Inc.*, 287 F.3d 643, 652–53 (7th Cir. 2002) (*United Air Lines*)).
24 Respondents argue that the subpoenas are overbroad. (ECF 10 at
25 11–12; ECF 12 at 11–19.) GMC Respondents highlight that they had
26 approximately 90,000 applicants between June 1, 2020 to the present.
27 (ECF 10 at 12.) VFE Respondents describe the EEOC's request for
28 information about employees involved in recruiting, hiring, and

11

1  promoting as "hopelessly overbroad given the size of VFE and the
2  number of people involved in these processes." (ECF 12 at 15–16.) VFE
3  Respondents also argue that the EEOC's request for all complaints by
4  applicants or employees on the basis of race and/or national origin is
5  overbroad because "[a]llegations of same-race or same-national origin
6  discrimination are utterly irrelevant to this investigation." (*Id.* at 18.)

7        To support their argument, VFE Respondents cite *EEOC v. Ford*
8  *Motor Credit Co.*, 26 F.3d 44 (6th Cir. 1994). However, the subpoenas
9  at issue in the instant application are dissimilar to the one the Sixth
10 Circuit declined to enforce in full in *Ford Motor Credit Co.* There, the
11 EEOC requested information for a time frame of over twelve years,
12 which was the length of the charging party's period of employment. *Id.*
13 at 45. The District Court narrowed the temporal scope of the subpoena
14 to three years and 300 days and the Sixth Circuit remanded with
15 similar instructions for information pertaining to employees other than
16 the charging party. *Id.* The Sixth Circuit explained that it could not
17 enforce the EEOC's data request in full because the likely relevance of
18 some of the employment records requested for other employees (who
19 may have never been eligible for promotion and who quit or were fired
20 over a decade prior) would be "extremely tenuous indeed, and yet the
21 likely burden to Ford of producing such information is substantial." *Id.*
22 at 47.

23       Unlike in *Ford Motor Credit Co.*, which involved an allegation of
24 sex discrimination in promotion decisions, the discrimination alleged in
25 the charges here affects the recruitment, hiring, promotion, and
26 employment conditions of a group of applicants and employees (White,
27 Black, Asian, non-Hispanic). Whereas information dating back over a
28 decade, potentially concerning employees no longer employed by the

company, was less relevant to the charges in *Ford Motor Credit Co.*, the information requested by the EEOC remains relevant in the instant case because the EEOC alleges discrimination not only in promotional decisions but also in recruitment, hiring, and employment conditions. Further, the EEOC asks only for information from June 2020 to present, a time frame more limited in scope than the one requested (and narrowed) in *Ford Motor Credit Co.*

The instant case is also distinguishable from *EEOC v. Loyola Univ. Med. Ctr.* (*Loyola*), 823 F. Supp. 2d 835 (N.D. Ill. 2011), which GMC Respondents cite in their opposition. There, the court held that the information sought by the EEOC in its subpoena was "not sufficiently tailored to the particular circumstances of the investigation[,]" and therefore the subpoena was unenforceable. *Id.* at 839. Specifically, the subpoena was "not directed to obtaining information regarding individuals with the same position or similar duties as" the charging party, an employee who was alleging discrimination based on a disability. *Id.* Further, the subpoena sought "the highly sensitive medical information of every Loyola employee that was required to submit to a[] [fitness for duty exam[3]]." *Id.*

Unlike in *Loyola*, none of the information sought here is sensitive medical information. Further, the EEOC is investigating discrimination based on race and national origin in recruitment, hiring, promotion, and terms of employment across all positions, rather than investigating a single employee's charge of discrimination based on a disability. Accordingly, it is relevant in the instant case to obtain

---

[3] "The FDE consisted of a blood test, a breath alcohol test, and a medical exam." *Loyola*, 823 F. Supp. 2d at 836.

13

1  information about applicants and employees for all positions and such a
2  request is not overbroad.
3      Nor is the EEOC's request for all discrimination complaints by
4  applicants or employees on the basis of race and/or national origin
5  overbroad. The EEOC's request for such information is tailored to its
6  investigation because it is investigating discrimination based on these
7  two protected categories. Further, as discussed above, these
8  complaints, including those of same-race or same-national origin
9  discrimination, will allow the EEOC to compare across responses, and
10  may reveal how Respondents respond to discrimination complaints.

**3**

12      Because the EEOC has demonstrated that the investigation is
13  within its enforcement authority and procedural requirements have
14  been met, the subpoenas are to be enforced unless Respondents show
15  that they are unduly burdensome. *See McCormick & Schmick's*, 2007
16  WL 1430004, at *7. "[W]hether a subpoena is overly burdensome turns
17  on the nature of the materials sought and the difficulty the employer
18  will face in producing them[.]" *McLane*, 581 U.S. at 73. "Compliance
19  with a subpoena is excused if 'compliance threatens to unduly disrupt or
20  seriously hinder normal operations of a business'" or "if the cost of
21  gathering the information would be 'unduly burdensome in the light of
22  the company's normal operating costs[.]'" *McCormick & Schmick's*, 2007
23  WL 1430004, at *7 (quoting *EEOC v. Md. Cup. Corp.*, 785 F.2d 471, 479
24  (4th Cir. 1986) and *Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d at
25  1428)). "Conclusory allegations of burdensomeness are insufficient."
26  *United Air Lines*, 287 F.3d at 653.
27      GMC Respondents contend that compliance with the subpoena
28  would be unduly burdensome because access to electronic employee

14

1 information is limited to select employees and because a search of
2 physical documents across twenty-one locations would be required.
3 (ECF 10 at 12–13.)  GMC Respondents estimate 320 hours to gather the
4 requested information.  (*Id.* at 12.)  GMC Respondents do not delineate
5 how many staff and/or hours export of the electronic records would take.

6    These burdens are mitigated by the EEOC's compromises and are
7 not undue.  Specifically, the EEOC has indicated that it will either (1)
8 accept production of scanned PDFs of GMC Respondents' paper
9 applications or (2) accept the paper applications, scan them and return
10 them to GMC Respondents; and, in either scenario, the EEOC also will
11 handle coding the necessary data fields.  (ECF 13 at 8.)

12    The cases relied on by GMC Respondents do not counsel
13 otherwise.  GMC Respondents cite *United Air Lines* to support their
14 argument that the burden in this case should limit or prevent
15 enforcement of the subpoena.  (ECF 10 at 11–12.)  There, the Seventh
16 Circuit did "not believe that the subpoena, as issued, c[ould] be
17 enforced" because the information sought went "far beyond" the inquiry
18 needed to investigate the charging party's allegation that she suffered
19 discrimination on the basis of national origin and sex.  *United Air Lines*,
20 287 F.3d at 654 (explaining that the information sought was "not
21 limited to individuals who may be considered similarly situated to [the
22 charging party] either by position . . . or by location").  Because "[t]he
23 financial and administrative demand" would have been "significant"
24 and, "in light of the *tangential need for the information*," the Seventh
25 Circuit concluded that compliance with the request would constitute an
26 undue burden.  *Id.* at 655 (emphasis added).

27    The instant case is distinguishable from *United Air Lines* because
28 the information sought is relevant to the EEOC's investigation; it does

not go "far beyond" the inquiry needed.  Further, the EEOC's offer to accept scanned PDFs or scan the paper applications itself and code the necessary data fields (ECF 13 at 8) will lessen the burden on GMC Respondents.  Thus, the financial and administrative demand on GMC Respondents is not significant considering the need for the information.

GMC Respondents also cite *McCormick & Schmick's*.  There, the court explained that "[c]ompliance with the subpoena *in its original form* would be a considerable burden on respondents." 2007 WL 1430004, at *7 (emphasis added).  However, in that case, the EEOC and the employer had reached a compromise that "would alleviate this burden considerably" by "shift[ing] the cost and lost time associated with reviewing and copying the files to the EEOC because respondent can ship the files to its office." *Id.*

Like in *McCormick & Schmick's*, the EEOC's acceptance in the instant case of scanned PDF paper applications or its willingness to scan the applications for GMC Respondents alleviates their burden significantly.  (ECF 13 at 8.)  Considering the EEOC's offer, GMC Respondents have not met their burden to show that compliance would be unduly burdensome.

VFE Respondents assert that, due to their use of two computer programs for applicant and employee tracking, it would be a significant burden to link the applicants in one system to the employees in the other.  (ECF 12 at 20.)  However, because the EEOC has since agreed to not require VFE Respondents to link their applicant and employee data (ECF 14 at 11), this would no longer create a burden on VFE Respondents.  VFE Respondents do not delineate how many staff and/or hours export of the electronic records would take.

1 Respondents propose sampling (ECF 10 at 16; ECF 12 at 22), but 2 because they have not met their burden to show that compliance would 3 be unduly burdensome, the Court declines to order such.

### D

5 Fourth, Respondents argue that the subpoenas violate the privacy 6 rights of applicants and employees.[4] (ECF 10 at 13–14; ECF 12 at 19– 7 20.) They challenge the subpoenas based on state-law privacy rights. 8 (ECF 10 at 13–14; ECF 12 at 19–20.) VFE Respondents propose giving 9 applicants and employees an opportunity to "opt out." (ECF 12 at 19.)

10 The Ninth Circuit has rejected similar arguments, holding that 11 "whatever state law privacy rights are implicated must yield to the 12 EEOC's power to vindicate federal interests in preventing 13 discrimination in employment." *EEOC v. Sears, Roebuck & Co.*, 885 14 F.2d 875 (9th Cir. 1989); *see also EEOC v. County of San Benito*, 818 F. 15 Supp. 289, 291 (N.D. Cal. 1993) (explaining that the "[EEOC]'s 16 mandates preempt state restrictions). The EEOC operates under strict 17 statutory confidentiality obligations, enforced by criminal penalties, 18 which afford third parties sufficient protection in the instant case. *See* 19 42 U.S.C. § 2000e-8(e)); *see also County of San Benito*, 818 F. Supp. at 20 292 (finding that 42 U.S.C. § 2000e-8(e) affords . . . sufficient 21 protection").

---

[4] VFE Respondents also criticize the EEOC's issuance of a press release concerning the investigation. (ECF 12 at 19.) The EEOC's investigation is confidential until enforcement action must be taken in the Court. *See* 42 U.S.C. § 2000e-8(d) ("It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information."). VFE Respondents acknowledge that the instant application is public and that the EEOC issued the press release the day after the application was filed. (ECF 12 at 19.)

**RECOMMENDATION**

For the reasons above, IT IS RECOMMENDED that the district judge issue an order: (1) accepting and adopting this Report and Recommendation; and (2) directing VFE Respondents to comply with Subpoena No. LA-24-135, as narrowed by the EEOC, and directing GMC Respondents to comply with Subpoena No. LA-24-134, as narrowed by the EEOC, within 45 days of an order accepting this Report and Recommendation.[5]

DATED: October 10, 2025

_____
HONORABLE STEPHANIE S. CHRISTENSEN
UNITED STATES MAGISTRATE JUDGE

---

[5] The EEOC also requests that the Court "grant EEOC its costs[.]" (ECF 1-1 at 23.) If the EEOC seeks costs, it may provide further briefing on the legal basis for such and the amount of costs incurred no later than 14 days following final ruling by the district judge.